**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM E. BISHOP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 13-1-RGA-MPT |
| | : | |
| JPMORGAN CHASE & CO., et al., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

In this matter, plaintiff, William Edward Bishop ("Bishop"), sued defendants, JPMorgan Chase & Co. ("JPM"); JPMorgan Chase Bank, National Association ("JPMCB"); and, John Doe for violating the Truth-in-Lending Act ("TILA").[1]  The complaint, filed on January 2, 2013, was apparently composed by Bishop and his brother Romie David Bishop, both non-attorneys.[2]  The complaint, a compilation of claims and Bishop's arguments in support, alleges fifteen counts of TILA violations relating to the assignment of Bishop's mortgage to JPMCB.[3]

The present action arises from a foreclosure action filed by JPMCB in the Superior Court of Delaware on November 20, 2012.[4]  In the state court action, JPMCB alleges Bishop failed to make payments on his mortgage.[5]  On the same day the

---

[1] D.I. 1.
[2] *Id.*
[3] *Id.*
[4] *See* D.I. 8-2, Ex. A.
[5] *Id.*

complaint was filed in the instant action, Bishop also filed a motion to dismiss the foreclosure action, arguing the same or similar TILA issues presented in his federal complaint.[6]

On February 22, 2013, defendants filed a motion to dismiss all fifteen counts of Bishop's complaint.[7]  Alternatively, defendants moved to stay the action pending the resolution of the state court action.[8]  Bishop filed his answering brief in opposition on March 25, 2013.[9]  Defendants' reply brief was filed on April 4, 2013.[10]

Prior to a court resolution of the motion to dismiss, on May 28, 2013, Bishop filed a motion for judicial notice to further argue why the court should not grant defendants' motion to dismiss or to stay the proceedings.[11]  On June 5, 2013, defendants responded that Bishop's motion for judicial notice operates as an improper sur-reply brief, which is prohibited in this court.[12]  Both motions are now before the court.

## II.    BACKGROUND

### A.    Facts

Bishop owns residential property located in Delaware City, Delaware.[13]  On April 1, 2008, Bishop closed on a refinanced loan for $120,531 (the "mortgage") through Freedom Mortgage Corporation ("Freedom").[14]  On April 17, 2008, the mortgage was

---

[6] *Compare* D.I. 1, *with* D.I. 8-2, Ex. B.
[7] D.I. 7.
[8] *Id.*
[9] D.I. 13.
[10] D.I. 14.
[11] D.I. 18.
[12] D.I. 19.
[13] D.I. 1, Ex. A.
[14] *Id.*

2

recorded.[15]  On June 1, 2011, Bishop defaulted on the mortgage.[16]

On January 10, 2012, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Freedom, assigned the mortgage to JPMCB.[17]  On February 7, 2012, that assignment was recorded.[18]  JPMCB is a national banking association organized and existing under the laws of the United States,[19] and is a wholly-owned subsidiary of JPM.[20]

In the state foreclosure action, JPMCB seeks $115,666.19.[21]  As noted previously, in his motion to dismiss filed in state court, Bishop asserts the same arguments under TILA raised in the instant action.[22]

Concurrent with his motion to dismiss the state foreclosure action, Bishop filed a complaint in this court against JPMCB, JPM, and John Doe under the TILA.[23]  The complaint, however, is not typically formatted.[24]  It consists of thirty-four pages, and contains a "statement of facts" and "argument" section.[25]  It vaguely alleges TILA violations against all three defendants collectively, without differentiating the violations among them.[26]  John Doe is listed as a defendant because Bishop alleges the disclosure statement assigning the mortgage to JPMCB is fraudulent, and there is a

---

[15] *Id.*
[16] D.I. 8, Ex. A.
[17] D.I. 1, Ex. A.
[18] *Id.*
[19] D.I. 8-2, Ex A.
[20] D.I. 1 at ¶ 19.
[21] D.I. 8-2, Ex. A.
[22] *See* D.I. 8-2, Ex. B; *Compare* D.I. 1, *with* D.I. 8-2, Ex. B.
[23] D.I. 1.
[24] *Id.*
[25] *Id.*
[26] *See id.*

3

mystery company that currently holds, or used to hold, the mortgage other than Freedom, MERS, JPM, or JPMCB.[27]  Bishop further asserts the time stamp and filing with the Delaware Recorder of Deeds is fraudulent.[28]  He provides no factual basis to support the fraud allegation.[29]

Prior to the filing of the actions in this court and the Superior Court, on August 16, 2012, Bishop forwarded to JPMCB the first of two qualified written requests.[30]  In his initial letter, he requested:  "(1) a debt verification; (2) information about the account; (3) copies of documents; (4) a list of all employees with whom Bishop spoke since January 2010; (5) the original copy of the complete chain of title of the security instruments; and (6) a first lien principal reduction and modification."[31]

In the second request dated September 12, 2012, and sent to JPMCB,[32] Bishop represented:

> (1) receipt of JPMCB-NA's response letter dated August 23, 2012;
> (2) JPMCB-NA failed to provide employee contact information;
> (3) the documents which JPMCB-NA enclosed, including HUD-1 and TILA Statement, showed a different loan number and/or was not a copy of the original;
> (4) he requested a loan modification; and
> (5) he would initiate bankruptcy proceedings if JPMCB-NA files an action against him.[33]

JPMCB responded to Bishop's written requests on at least seven separate occasions.  Those letters provide:

---

[27] *Id.* at ¶¶ 28-32.
[28] *Id.* at ¶ 28.
[29] *See* D.I. 1.
[30] D.I. 1 at ¶ 23.
[31] D.I. 8 at 4-5.
[32] D.I. 1 at ¶ 23.
[33] D.I. 8 at 5.

(1) <u>August 23, 2012</u>:  (a) acknowledges receipt of Bishop's August 21, 2012 letter, (b) provides the account details, (c) identifies the investor as "JPM Chase," and (d) encloses the requested documents.
(2) <u>September 1, 2012</u>:  advises JPMCB-NA is researching Bishop's questions.
(3) <u>September 13, 2012</u>:  advises JPMCB-NA researching Bishop's questions.
(4) <u>September 20, 2012</u>:  (a) acknowledges receipt of Bishop's August 11, 2012 letter, (b) identifies the obligation is with [JPMCB], (c) encloses the requested documents, and (d) provides account details.
(5) <u>September 21, 2012</u>:  advises JPMCB-NA received Bishop's correspondence on August 16, 2012.
(6) <u>October 1, 2012</u>:  states JPMCB-NA received Bishop's letter on September 26, 2012.
(7) <u>October 5, 2012</u>:  (a) advises receipt of Bishop's letter on September 27, 2012, (b) identifies the obligation is with Chase, and (c) provides account details.[34]

"Additionally, on December 2, 2011 and June 1, 2012, JPMCB-NA provided Bishop with letters advising of the identity and contact information of a dedicated Customer Assistance Specialist."[35]

## B.    Standard of Review

In analyzing Bishop's motions, the court is mindful of the more liberal approach afforded pro se litigants like Bishop, however, pro se plaintiffs are required to follow the rules of procedure and substantive law.[36]  Thus, while Bishop's complaint is not typical,

---

[34] *Id.* at 5-6.
[35] *Id.* at 6.
[36] *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel."); *Farreta v. California*, 422 U.S. 806, 835 n.46 (1975) (finding pro se status is not a license to disregard procedural rules or substantive law).  This circuit has repeatedly adhered to Supreme Court precedent in that regard.  *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 567, 570 (3d Cir. 1996); *Lewis v. Williams*, C.A. No. 05-013-GMS, 2010 WL 2640188, at *3 (D. Del. June 30, 2010) (proceeding as a pro se litigant does not give a party the right to "flagrantly disregard in the Federal Rules of Civil Procedure in an effort to manipulate rulings in his favor"); *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 604 (D. Del. 2007).

the court will consider all properly plead facts therein.

## III.    DISCUSSION

### A.    Rule 12(b)(6) Standard

FED. R. CIV. P. 12(b)(6) governs a motion to dismiss a complaint for failure to

state a claim upon which relief can be granted.  The purpose of a motion under Rule

12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide

the merits of the case.[37]  "The issue is not whether a plaintiff will ultimately prevail, but

whether the claimant is entitled to offer evidence to support the claims."[38]  A motion to

dismiss may be granted only if, after "accepting all well-pleaded allegations in the

complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is

not entitled to relief."[39]  While the court draws all reasonable factual inferences in the

light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions,"

and "legal conclusions."[40]

To survive a motion to dismiss, a plaintiff's factual allegations must be sufficient

---

[37] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[38] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[39] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

[40] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

6

to "raise a right to relief above the speculative level . . . ."[41]  Plaintiffs are therefore

required to provide the grounds of their entitlement to relief beyond mere labels and

conclusions.[42]  Although heightened fact pleading is not required, "enough facts to state

a claim to relief that is plausible on its face" must be alleged.[43]  A claim has facial

plausibility when a plaintiff pleads factual content sufficient for the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.[44]  Once

stated adequately, a claim may be supported by showing any set of facts consistent

with the allegations in the complaint.[45]  Courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint, and matters of public

record when reviewing a motion to dismiss.[46]

### B.    Truth-in-Lending Act

"The Truth-in-Lending Act was passed primarily to aid the unsophisticated

consumer so that he would not be easily misled as to the total costs of financing."[47]  "For

when doing business as usual the figures on conditions randomly placed on the

---

[41] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[42] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[43] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[44] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[45] *Twombly*, 550 U.S. at 563 (citations omitted).

[46] *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

[47] *Thomka v. A. Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir. 1980).

traditional form would reveal to the average business-man the true cost of the transaction, but for the inexperienced or uninformed there was the possibility of deception, misinformation, or at least an obliviousness to the true costs which some day they would have to pay."[48]

TILA imposes strict liability on creditors to follow its requirements.[49]  "To recover under the Act a consumer need not prove, or even allege, [he] was actually deceived or injured by a creditor's failure to comply with TILA requirements."[50]  "[I]t is well established that, as a remedial statute, the TILA should be liberally construed in favor of borrowers."[51]

## IV.    ANALYSIS

### A.    Bishop's Truth-in-Lending Act Claims

#### 1.  Counts One-Three: 15 U.S.C. § 1641(a)

Under TILA § 1641(a), assignees are liable:

> only if the [TILA] violation . . . is *apparent on the face of the disclosure statement* . . . .  For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) *a disclosure which can be determined to be incomplete* or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.[52]

In *Shepeard*, the TILA violations were apparent because spaces left blank on the

---

[48] *Id.*
[49] *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1299 (D. Del. 1990).
[50] *Id.*
[51] *Id.* at 1299-1300.
[52] *Shepeard*, 730 F. Supp. at 1302 (citing 15 U.S.C. § 1641(a) (2011) (emphasis added)).

disclosure form were intended to indicate monthly payments and collateral.[53]  The Third Circuit held these obvious omissions were sufficient to prove a TILA claim.[54]

Here, Bishop fails to allege any facts decribing how the TILA disclosure statement is incomplete or inaccurate.  Bishop conclusory asserts JPMCB, JPM, and a John Doe Company or individual, conspired against him by fraudulently creating the disclosure statement.[55]  Specifically, Bishop argues the disclosure statement:  "(1) lists an [sic] false transferee, or assignee; (2) claims a false exchange of valuable consideration between a transferee, and transferor; (3) fails to comply with the requirement of being witnessed by two natural persons; (4) failed to be executed in a timely manner, grossly untimely, up to 20 months late."[56]

Bishop's first two arguments relate to fraud.  Essentially, he contends the disclosure statement lists a false assignee and false consideration because it is fraudulent.[57]  He fails, however, to proffer any factual basis for this accusation.[58]  Bishop claims Citimortgage, Inc. is the assignee on the disclosure statement, even though the document clearly identifies JPMCB as the assignee.[59]  Bishop's claims for fraud are mere unsupported allegations and legal conclusions, insufficient to survive a motion to dismiss.[60]

His third argument, the mortgage assignment must be witnessed by two people,

---

[53] *Shepeard*, 730 F. Supp. at 1302.
[54] *Id.*
[55] D.I. 1 at ¶¶ 28-32.
[56] *Id.* at ¶ 28.
[57] *Id.* at ¶ 28.
[58] *See id.*
[59] *Id.*
[60] *See supra* Part III.A.

is merely an incorrect legal conclusion.  Bishop cites no authority that *two* witnesses are required.[61]  Rather, the law explicitly provides an assignment of mortgage needs only *one* witness.[62]  Since his third conclusion is contrary to law, it also is insufficient to survive defendants' motion.[63]

His fourth argument, the assignment was not executed timely, directly correlates to his § 1641(g) claims under Counts nine through fourteen, which requires a new owner of a loan to notify the borrower within thirty days of the transfer.  This argument is addressed later in this decision.[64]

Contrary to Bishop's allegation, the disclosure statement is not incomplete. Unlike the document in *Shepeard*, JPMCB's disclosure statement did not contain blank spaces–it was complete.[65]  Additionally, pursuant to § 1641(g)(A)-(E), its disclosure statement and subsequent correspondence to Bishop provided:  JPMCB's identity, address, and telephone number; the date of transfer; how to contact a JPMCB representative; the location of the Delaware Recorder of Deeds; and other relevant information regarding the transfer.[66]  Notwithstanding the mere legal conclusions alleged in Counts one through three,[67] the complaint fails to proffer any facts to plead a

---

[61] *See* D.I. 1.
[62] DEL. CODE ANN. tit. 25, § 2109(b) (2012) ("All assignments of mortgages or any sealed instruments heretofore made in the presence of 1 witness and all satisfactions made by assignees in such assignments are good and valid.").
[63] *See supra* Part III.A.
[64] *See infra* Part IV.A.4.
[65] D.I. 1, Ex. A.
[66] *See id.  See also* D.I. 8, Exs. E-F.
[67] D.I. 1 at ¶¶ 1-3 ("Count One:  To/for a determination if acts claimed, and the failure to act claimed herein are Violations Title 15 USC [sic] § 1641 - LIABILITY OF ASSIGNEES [sic] (a).").

claim under § 1641(a) for inaccurateness or incompleteness on the face of the disclosure.  Therefore, Counts one through three are dismissed.

### 2.  Count Four:  § 1641(d)(1)

Section 1641(d)(1) only applies to certain loans that qualify under the Home Ownership Equity Protection Act ("HOEPA").[68]  HOEPA governs high rate loans which exceed 8% of the total loan amount.[69]

Here, Bishop fails to plead adequate facts to trigger HOEPA.  Moreover, according to documents provided by JPMCB in its response to Bishop's written requests, his APR was 6.256%.[70]  Because his APR is less than the minimum threshold required to violate § 1641(d) and HOEPA, Count four fails to state a claim.

### 3.  Counts Five-Eight:  § 1641(e)

Section 1641(e) reiterates the requirements under § 1641(a) that "any civil action against a creditor for a violation of [TILA] . . . may be maintained against any assignee of such creditor only if:"

> (A) the violation for which such action or proceeding is brought is *apparent on the face of the disclosure statement* provided in connection with such transaction pursuant to this subchapter; and

> (B) the assignment to the assignee was voluntary.[71]

A violation is apparent on the face of the disclosure statement if:

> (A) *the disclosure can be determined to be incomplete or inaccurate* by a comparison among the disclosure statement, any itemization of the

---

[68] 15 U.S.C. § 1641(d)(1) (2011).

[69] § 1641(d)(1) (citing 15 U.S.C. § 1602 (aa), (bb) (2011)).

[70] D.I. 8, Ex. A.

[71] 15 U.S.C. § 1641(e)(1) (2011) (emphasis added).

amount financed, the note, or any other disclosure of disbursement; or

(B) the disclosure statement does not use the terms or format required to be used by this subchapter.[72]

As previously discussed, Bishop alleges no facts explaining how the TILA disclosure statement is incomplete or inaccurate on its face.[73]  He merely asserts in a conclusory fashion that JPMCB provided a fraudulent disclosure statement.[74]  Thus, Counts five through nine fail absent a factual basis sufficient to state a claim for an incomplete or inaccurate disclosure statement based on fraud.

### 4.  Counts Nine-Fourteen:  § 1641(g)

Section 1641(g) provides a new assignee of a loan notify the borrower within thirty days of the transfer.[75]  The Third Circuit requires a showing of actual damages for a claim under § 1641(g).[76]  To prove actual damages, a plaintiff must demonstrate he suffered a loss because he detrimentally relied on an inaccurate or incomplete disclosure.[77]  Under *Vallies*, to recover actual damages, a borrower must show he:  (1) read the TILA disclosure statement, (2) understood the disclosed charges, (3) would have sought a lower price if the disclosure statement had been accurate, and (4) would have obtained a lower price.[78]  Actual damages are distinct and separate from

---

[72] § 1641(e)(2) (emphasis added).

[73] *See supra* Part IV.A.1.

[74] *Id.*

[75] 15 U.S.C. § 1641(g) (2011).

[76] *Vallies v. Sky Bank*, 591 F.3d 152, 157 (3d Cir. 2009).  However, showing actual damages under § 1641(g) is not required in all circuits.  Therefore, Bishop's reference to the District Court of Alabama, which does not require the showing of actual damages, is not applicable law in the Third Circuit.  *See* D.I. 1 at ¶ 63.

[77] *Vallies*, 591 F.3d at 157-58.

[78] *Id.* at 155.

reasonable attorney's fees; that is, reasonable attorney's fees are not sufficient to prove actual damages.[79]

In the instant matter, Bishop argues as a result of the alleged inaccurate or incomplete disclosure he sustained the following:  (a) costs for mailing letters and documents to ascertain the assignee of the loan; (b) traveling expenses (gas, parking fees) and time from work for two court appearances to dispute claims by defendants; (c) Recorder of Deeds costs for documents; (d) expenses related to producing pleadings (paper, ink, copying fees); and (e) the filing fee for this action.[80]  These costs have been incurred to advance his TILA claim.  Such alleged damages, however, are not the type related to a violation under § 1641(g).[81]

In addition, to prove the reliance prong of actual damages under § 1641(g), Bishop had to rely on the alleged inaccurate disclosure, and sustain damages as illustrated in *Vallies*, which were not pled in his complaint.[82]  In the absence of any alleged detrimental reliance and a factual basis demonstrating the disclosure was inaccurate or incomplete under § 1641(g), Counts nine through fourteen are dismissed.

### 5.  Count Fifteen:  § 1641(f)

Section 1641(f) provides that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the

---

[79] *Bradford v. HSBC Mortg. Corp.*, 280 F.R.D. 257, 261-62 (E.D. Va. 2012) ("[A]ttorney's fees that a TILA claimant incurs advancing his TILA action are not 'actual damage' under TILA.").
[80] D.I. 1 at ¶ 51.
[81] *See Bradford*, 280 F.R.D. at 261-62.
[82] *See* D.I. 1.

obligation."[83]

Here, JPMCB acknowledges that it is the servicer of the mortgage as defined under TILA.[84]  As a servicer, JPMCB recognizes it is required to provide written responses to requests submitted by Bishop.[85]  Bishop sent his first written request dated August 16, 2012.[86]  In response, JPMCB advised in writing ten days later of the account details and enclosed the requested documents.[87]

Bishop's second written request occurred on September 12, 2012.[88]  Again, JPMCB responded in writing within ten days providing account details and the documents he requested.[89]  In addition to the timely responses by JPMCB, it sent five more letters to Bishop.[90]  Therefore, Count fifteen is dismissed because JPMCB adhered to the requirement under § 1641(f) to respond in writing addressing the written requests by the borrower.

As a result, in the absence of any viable claim, defendants' motion to dismiss for failure to state a claim is granted.

**B.  Bishop's Motion for Judicial Notice**

D. DEL. LR 7.1.2 and LR 7.1.3 only authorize an answering brief for the non-moving party.  D. DEL. LR 7.1.2(b) allows an opening brief or memorandum be filed with

---

[83] 15 U.S.C. § 1641(f)(2) (2011).
[84] D.I. 8 at 11-12.
[85] *Id.*
[86] *Id.*, Ex. C.
[87] *Id.* at 12.
[88] *Id.*, Ex. D.
[89] *Id.* at 12.
[90] D.I. 8 at 12.

the motion,[91] a response or answering brief thereto by the non-moving party,[92] and

subsequently, a reply brief by the moving party.[93]  No additional papers are authorized

absent court approval, which means no sur-reply brief may be filed without court

authorization.[94]

    The purpose of a sur-reply is "to address any new issues or legal bases which

are asserted for the first time in a reply brief,"[95] not to allow similar arguments repetitive

of prior arguments in the answering brief, or could have been raised in the answering

brief.[96]  Generally, courts grant leave for sur-reply briefing when a party raises new

arguments in its reply brief different from the opening brief, or are beyond responding to

the answering brief.[97]

    In the present matter, defendants filed their motion and opening brief on

February 22, 2013.[98]  Bishop's answering brief was filed on March 25, 2013.[99]

Defendants submitted their reply brief on April 4, 2013.[100]  Roughly six weeks later,

---

[91] The moving party or movant may accompany with the motion either a supporting brief or memorandum of points and authorities.  *See* D. DEL. LR 7.1.2(a).

[92] The non-moving or responding party's responsive papers must be in the form adopted by the moving party.  *Id.*

[93] *See* D. DEL. LR 7.1.2(b).

[94] *Id.*

[95] *Geib v. James*, CV-04-1923, 2007 WL 2595423, at *9 n.3 (W.D. Pa. Aug. 31, 2007).

[96] *PHL Variable Ins. Co. v. Alan Wollman Ins. Trust*, C.A. No. 08-53-JJF, 2010 WL 283688, at *1 (D. Del. July 16, 2010).

[97] *Contram Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D. Kan. 1999) ("The general rule against sur-replies and other post reply briefing fairly and reasonably assists 'the court in defining when briefed matters are finally submitted and in minimizing the battles over which side should have the last word.'"); *Geib*, 2007 WL 2595423, at *9 n.3.

[98] D.I. 8.

[99] D.I. 13.

[100] D.I. 14.

Bishop filed the motion for judicial notice on May 28, 2013.[101]

In the motion for judicial notice, Bishop continued to advance his argument that defendants' motion should be denied.  Specifically, Bishop argues when an in rem action is filed in the Delaware Superior Court, the defendant is prevented from filing any counter or cross claims under 10 DEL. C. § 2901.[102]  The application and relevance of this statute is questionable, since defendants have not filed any counter or cross claims in the instant action.  Nevertheless, because the motion relates to an argument in his answering brief, it operates as a sur-reply brief for which Bishop neither requested nor obtained prior court approval to file.  Because his motion is improperly filed, the court need not consider it.

Even if his motion for judicial notice does not operate as a sur-reply brief, in light of the previous ruling on Bishop's claims, the motion for judicial notice is moot.  Accordingly, the motion for judicial notice is denied.

## V.      ORDER AND RECOMMENDED DISPOSITION

Consistent with the findings contained in the Report and Recommendation,

IT IS RECOMMENDED that:

(1) Defendants' motion to dismiss for failure to state a claim (D.I.  7) is GRANTED.

(2) Plaintiff's motion for judicial notice (D.I. 18) is DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14)

---

[101] D.I. 18.
[102] Id.

days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated November 16, 2009, a copy of which is found on the Court's website www.ded.uscourts.gov.

A copy of the Report and Recommendation and this Order was mailed to William E. Bishop on June 21, 2013.

Date:  June 21, 2013                    /s/  Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE